
**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

**v.**

## VINCENT T. TEDTAOTAO,
Defendant-Appellant.

Supreme Court Case No. CRA25-014
Consolidated Superior Court Case Nos. CF0239-85; CF0058-86;
CF0097-86; CF0194-90; CF0214-91; CF0570-96

## OPINION

## Cite as: 2026 Guam 8

Appeal from the Superior Court of Guam
Argued and submitted on January 29, 2026
Hagåtña, Guam

Appearing for Defendant-Appellant:
Zachary C. Taimanglo, *Esq.*
Assistant Public Defender
Public Defender Service Corporation
779 Rte. 4
Sinajana, GU 96910

Appearing for Plaintiff-Appellee:
George Raymond Kolb, Jr., *Esq.* (briefed)
William Lyle Stamps, *Esq.* (argued)
Assistant Attorneys General
Office of the Attorney General
Appellate & Writing Division
134 W. Soledad Ave., Ste. 301
Hagåtña, GU 96910

**E-Received**
8/4/2026 1:46:11 PM

BEFORE: KATHERINE A. MARAMAN, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and ROBERT J. TORRES, Associate Justice.

**TORRES, J.:**

[1]      Defendant-Appellant Vincent T. Tedtaotao appeals from the Superior Court's denial of his post-conviction motion for relief.  Over 40 years ago, Tedtaotao was convicted of aggravated murder for shooting a man when he was nineteen years old.  The trial court sentenced Tedtaotao to the statutorily mandated sentence of life without parole ("LWOP").  Tedtaotao committed many other crimes while incarcerated at the Department of Corrections ("DOC").  Tedtaotao was transferred to federal custody in 1996.  In 2021, Tedtaotao filed a *pro se* motion for compassionate release.  Aided by appointed counsel, Tedtaotao filed an amended motion for compassionate release or, alternatively, for resentencing.

[2]      While these motions were pending, we issued our decision in *People v. Adriatico*, 2024 Guam 7, which cast doubt on the legality of mandatory LWOP sentences for youthful offenders.  In *Adriatico*, we remanded for an evidentiary hearing after finding that the defendant had stated a colorable claim that mandatory LWOP for youthful offenders violated the Organic Act's prohibition on cruel and unusual punishment.  *Adriatico* stands for the proposition that when a motion to correct an illegal sentence states a prima facie case, an evidentiary hearing is required unless the issue can be resolved as a matter of law.

[3]      In supplemental briefing before the trial court, Tedtaotao argued that the similarities between his case and *Adriatico* were "palpable."  Record on Appeal ("RA"), tab 182 at 7 (Suppl. Br. re: Resentencing After *Adriatico*, Feb. 10, 2025).  Yet the trial court summarily denied Tedtaotao's motion, concluding his LWOP sentence was legal without a hearing or any analysis of whether the sentence was cruel and unusual punishment.  Tedtaotao raises two issues on appeal:

(1) whether the trial court misapprehended *Adriatico*, and (2) whether the trial court has the authority to grant compassionate release.

**[4]**     Tedtaotao's first issue is straightforward, and we conclude the trial court's decision violated the precedent this court established in *Adriatico*. Tedtaotao was entitled to an evidentiary hearing because (1) this court held the defendant in *Adriatico* had made a prima facie case for relief and (2) Tedtaotao's claim is indistinguishable from that in *Adriatico*. Further compounding the trial court's error, *Adriatico* provides the legal standard that should be applied to a claim that mandatory LWOP for a youthful offender is inorganic. Despite being presented with the *Adriatico* decision, the trial court summarily concluded that Tedtaotao's sentence was legal without the requisite analysis. This was reversible error.

**[5]**     Whether Tedtaotao is entitled to compassionate release is more difficult to resolve. Tedtaotao's briefing on this complex issue is inadequate. He requests an extraordinary judicial remedy but invests little effort into researching how this court could justify creating a compassionate-release procedure within the context of this appeal. *People v. Taisacan*, 2023 Guam 19 ¶ 30 ("Courts are not in the business of judicial legislation." (quoting *Carlson v. Guam Tel. Auth.*, 2002 Guam 15 ¶ 46 n.7)). We decline to reach this inadequately briefed issue on appeal.

**[6]**     We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

**[7]**     Tedtaotao was born in October 1965. In August 1985, when Tedtaotao was nineteen years old, he was arrested for shooting a man outside of Bottoms Night Club in Maite.[1] Tedtaotao was

---

[1] The briefs of both parties appear to assume that Tedtaotao was twenty years old when he committed aggravated murder. However, the shooting occurred on August 20, 1985, nearly two months before Tedtaotao's twentieth birthday. For youth-offender purposes (which focuses on brain development and impulse control), the key

indicted for aggravated murder and attempted aggravated murder, with two corresponding deadly-weapon special allegations. RA, tab 8 at 1 (Indictment, Sep. 19, 1985).[2] The jury returned a verdict finding Tedtaotao guilty of aggravated murder, attempted murder as a lesser-included offense of attempted aggravated murder, and the two deadly-weapon special allegations. Tedtaotao was given mandatory LWOP for the aggravated-murder conviction, fifteen years for attempted murder, and five years for the special allegations.[3] Tedtaotao appealed to the Appellate Division of the District Court of Guam, which affirmed after finding the trial court did not abuse its discretion when it prevented Tedtaotao from presenting evidence of the initial aggressor-victim's character. *People v. Tedtaotao*, D.C. No. 86-00044A, 1988 WL 236529, at *1 (D. Guam App. Div. Jan. 19, 1988), *aff'd*, 896 F.2d 371 (9th Cir. 1990). The Ninth Circuit also affirmed. *See generally Tedtaotao*, 896 F.2d 371.

[8]     In 1990, Tedtaotao's attorney moved for reduction of his sentence to life *with* the possibility of parole. The trial court denied the motion, finding that LWOP was mandatory under the aggravated-murder statute.

[9]     While Tedtaotao was serving his sentence at DOC, he was convicted of felony escape five times. During one of these escapes in 1991 (Superior Court Case No. CF0214-91), he committed several violent crimes (including holding the Guam Treasurer's family hostage) so he and an

---

inquiry is the age of the defendant when they committed the crime, not when they were convicted or sentenced. *See, e.g.*, *People v. Revells*, 420 N.Y.S.2d 380, 381 (App. Div. 1979). On the night of the murder, Tedtaotao was nineteen years and ten months old.

[2] Unless otherwise noted, we cite to the Record on Appeal from Tedtaotao's aggravated-murder conviction in Superior Court Case No. CF0239-85. For purposes of his post-conviction motion, all his criminal matters were consolidated.

[3] The fifteen years were concurrent with LWOP, while the five-year sentencing enhancement was consecutive to it. Thus, Tedtaotao was functionally sentenced to LWOP plus five years.

accomplice could rob the Guam Treasury.[4]  *See generally People v. Tedtaotao*, Crim. No. 93-00001A, 1994 WL 129737 (D. Guam App. Div. Mar. 15, 1994), *aff'd*, 46 F.3d 1144 (9th Cir. 1995).  In 1996, Tedtaotao was placed in federal custody.  Tedtaotao was in custody at USP Allenwood in Pennsylvania when he filed his motion for compassionate release, but he was later transferred to USP Florence High in Colorado.

### B.  Procedural History

[10]     In April 2021, the Superior Court received a handwritten motion from Tedtaotao requesting compassionate release.  The court also received a motion from Tedtaotao requesting appointment of counsel the same day.  The trial court appointed counsel and eventually consolidated all of Tedtaotao's cases for consideration of his motion for compassionate release.  On May 23, 2024, Tedtaotao's appointed counsel filed an amended motion for compassionate release or, alternatively, for resentencing.  Tedtaotao argued that he met the criteria for release under the federal compassionate-release statute.  He acknowledged that "[t]here is no equivalent Guam statute and sentencing guideline which directly applies to Mr. Tedtaotao's situation. . . .  However, this Court may afford Mr. Tedtaotao the functional equivalent."  RA, tab 171 at 5 (Am. Mot. Compass. Release, May 23, 2024).  He argued that the Superior Court had inherent power under 7 GCA § 7107(h) to grant compassionate release.  Tedtaotao acknowledged that the plain language of the aggravated-murder statute did not provide for the possibility of parole, but in the alternative to compassionate release, he asked the trial court "to exercise its inherent authority to do as ought to be done" and reconsider his LWOP sentence.  *Id.* at 6.

---

[4] Tedtaotao was convicted of Second-Degree Robbery, two counts of Second-Degree Kidnapping, Burglary, Terrorizing, Felony Escape, and five Deadly-Weapon Special Allegations.  By the time of his sentencing for his fifth escape conviction, the trial court was not particularly precise about how all Tedtaotao's sentences would run, but it appears Tedtaotao's aggregate sentences are at least LWOP plus 28 years.  At oral argument, Tedtaotao maintained that he might be eligible for parole if his LWOP sentence is found inorganic.  *See* Digital Recording at 10:20:40–10:23:47 (Oral Arg., Jan. 29, 2026); *see also* 9 GCA § 80.72(a) (as amended by Guam Pub. L. 34-028:2 (July 13, 2017)) (providing person sentenced to life may be eligible for parole after 25 years).

**[11]**     There was difficulty arranging for Tedtaotao to participate in a hearing on his compassionate-release motion. *See* RA, tab 167 (Min. Entry, May 16, 2023); RA, tab 168 (Min. Entry, Oct. 3, 2023); RA, tab 169 (Min. Entry, Jan. 16, 2024); RA, tab 170 (Min. Entry, Mar. 20, 2024); RA, tab 175 (Min. Entry, July 10, 2024); RA, tab 179 (Min. Entry, Oct. 24, 2024). Eventually, a hearing was set for early January 2025. In the interim, this court decided *Adriatico*. At the motion hearing, the People raised the recently issued *Adriatico* opinion. Defense counsel stated that "[i]t was not [his] intention to bring up *Adriatico* today" because it had not been briefed, and that it was his understanding they were before the court on the compassionate-release motion, not the motion for resentencing. Transcript ("Tr.") at 5 (Mot. Compass. Release, Jan. 7, 2025). He stated that *Adriatico* would not apply to the motion for compassionate release but may apply to the motion for resentencing, and that he would brief the issue with leave of the court.

**[12]**     Tedtaotao testified that he has been diagnosed with depression, high blood pressure, and joint and back pain (with a recommendation for back surgery). He also testified that he was taking "numerous medications." *Id.* at 10. Tedtaotao testified that when the COVID-19 pandemic began, he did not know if Guam had compassionate release, and he had filed a motion with the District Court of Guam. Defense counsel argued that Tedtaotao met all the criteria for compassionate release under the federal statute, and that but for his status as a Guam prisoner, he would have been released. Tedtaotao clarified that he was not seeking compassionate release based on COVID, but on his age and medical conditions.[5]

**[13]**     The trial court took the motion for compassionate release under advisement and stated that it would allow the parties to brief the issue of resentencing. The trial court stated it would allow

---

[5] Tedtaotao also testified that he had grown up in an abusive home, and that on the night of the murder he had not gone out looking for trouble, but the trial court instructed him to tailor his testimony to the grounds for compassionate release.

the regular time for filing responsive pleadings and then would decide whether oral argument was required.

[14]    After the hearing, Tedtaotao filed a supplemental brief on the *Adriatico* decision, but the People filed no response.  The brief summarized the relevant portion of *Adriatico* discussing mandatory LWOP, where this court remanded for an evidentiary hearing after finding that the defendant had stated a colorable claim that mandatory LWOP for youthful offenders violated the Organic Act's prohibition on cruel and unusual punishment.  RA, tab 182 at 2–4 (Suppl. Br. re: Resentencing After *Adriatico*).  Tedtaotao argued that "Guam has long recognized the need for treating juvenile and youth offenders differently from adult offenders." *Id.* at 4.  He noted that the *Adriatico* decision "strongly implied" that mandatory LWOP for youthful offenders was inorganic. *Id.* at 6 (quoting *Adriatico*, 2024 Guam 7 ¶ 65 n.15).  He also argued that "the similarities found in these matters [are] palpable." *Id.* at 7.

[15]    The trial court issued a decision and order denying Tedtaotao's motions.  RA, tab 183 (Dec. & Order re Am. Mot. Compass. Release, Apr. 7, 2025).  The trial court first determined that it did not "have authority to grant Defendant Tedtaotao's Compassionate Release under federal statute 18 U.S.C.A. § 3582(c)(1)(A)." *Id.* at 6.  The court emphasized that "Guam's laws do not provide local authority for a defendant's compassionate release," and that despite invoking the court's inherent authority, "[s]uch powers are strictly procedural in nature and do not confer any substantive authority nor increase the jurisdiction of the court." *Id.* (quoting *People v. Wai Kam Ho*, 2009 Guam 18 ¶ 8).  The trial court also rejected the argument that 7 GCA § 7107 authorized the court to grant compassionate release. *Id.* at 7 (stating that section 7107 "gives each court of Guam the 'power [t]o amend and control its process and orders so as to make them conformable to law and justice'" (alteration in original) (quoting 7 GCA § 7107(h) (2005))).  The trial court

concluded that "[w]ithout more, the court finds that it does not have inherent authority under *People v. Ho*, or authority under 7 G.C.A. § 7107(h), to grant the Defendant's compassionate release in accordance with federal statute 18 U.S.C.A. § 3582(c)(1)(A)." *Id.* at 8.

[16]    The trial court then turned to the motion for resentencing, holding that "*Adriatico* cannot be firmly applied to Defendant Tedtaotao's case to warrant his resentencing." *Id.* The trial court focused on the fact that the *Adriatico* court had found LWOP for *attempted* aggravated murder to be an illegal sentence. *Id.* at 9. The trial court reasoned that:

> The Guam Supreme Court in *Adriatico* only found that the defendant's two LWOP sentences as to his Attempted Aggravated Murder charges warranted correction, because "[a]t the time of his sentencing, Guam law did not permit LWOP for *attempted* aggravated murder." Although *Adriatico* vacated the defendant's judgment in CF0116-84 as to the Attempted Aggravated Murder charges, it did not vacate his other LWOP sentences for the Aggravated Murder charge in that same case, as well as, the two counts of Aggravated Murder in CF0085-83.
>
>     While both Adriatico and Tedtaotao were considered youthful offenders at the time of their convictions, the court does not find that a LWOP sentence for Aggravated Murder was an illegal sentence at the time of their convictions. Although the Defendant in *this* case believes that the *Adriatico* opinion can be firmly applied to his case, the nature of the charges that led to the Guam Supreme Court's vacation of Adriatico's judgment is not the same as Defendant Tedtaotao. Therefore, the court finds that Defendant Tedtaotao's LWOP sentence for Aggravated Murder does not warrant resentencing.

*Id.* (alteration in original) (citations omitted). Thus, the trial court ruled as a matter of law that mandatory LWOP for youthful offenders is not an illegal sentence because the aggravated-murder statute authorized it. Tedtaotao timely appealed.

## II. JURISDICTION

[17]    This court has jurisdiction over appeals from the Superior Court of Guam under 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-100 (2026)) and 7 GCA §§ 3107 and 3108(a) (2005). "This court has appellate jurisdiction over a post-judgment order affecting a

defendant's substantial rights." *Adriatico*, 2024 Guam 7 ¶ 14 (citing 8 GCA § 130.15(c) (2005); *People v. McKinney*, 2018 Guam 10 ¶ 8).

### III.  STANDARD OF REVIEW

[18]    Summary denial of a post-conviction motion without an evidentiary hearing is reviewed *de novo*. *See State v. McColl*, 2011 SD 90, ¶ 10, 807 N.W.2d 813, 816.[6]  The standard is "[w]hether a motion alleges facts which, if true, would entitle a defendant to a hearing . . . ."  *Id.*; *see also People v. Martinez*, 2025 Guam 17 ¶ 48 ("When presented with a petition for a writ of habeas corpus, a court must first determine whether the petition states a prima facie case for relief—that is, whether it states facts that, if true, entitle the petitioner to relief . . . ." (quoting *People v. Romero*, 883 P.2d 388, 391 (Cal. 1994) (in bank))); *People v. Sledge*, 213 Cal. Rptr. 3d 265, 270 (Ct. App. 2017) ("Like the initial screening of a petition for writ of habeas corpus, '[a]n evidentiary hearing is required if . . . there is a reasonable likelihood that the petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact.'" (alterations in original) (quoting Cal. R. Ct. 4.551(f))); 39 Am. Jur. 2d *Habeas Corpus* § 173 (May 2026 Update) ("A postconviction petitioner is entitled to an evidentiary hearing unless the petition and

---

[6] South Dakota is one of few jurisdictions like Guam without a post-conviction procedure act.  *See In re Brockmueller*, 374 N.W.2d 135, 138 (S.D. 1985) (noting 1983 repeal of Post Conviction Procedure Act and incorporation into Habeas Corpus Act).  Instead, similar to Guam, the primary avenue of post-conviction relief in South Dakota is habeas corpus.  Generally, South Dakota courts recognize a petition for habeas corpus, a motion to correct an illegal sentence, or a motion to withdraw a guilty plea as possible avenues for post-conviction relief.  *See State v. Anderson*, 2005 SD 22, ¶ 24, 693 N.W.2d 675, 682.  They also recognize coram nobis in limited scenarios.  *See Gregory v. Class*, 1998 SD 106, ¶ 20, 584 N.W.2d 873, 879 (reviewing summary denial of coram nobis petition *de novo*).  We find this is consistent with the procedures available in Guam, so we find South Dakota caselaw on standards of review in post-conviction cases to be persuasive.  It appears that when a post-conviction motion is summarily denied without a hearing in South Dakota, their Supreme Court will apply the habeas standard for whether a hearing was required: "Whether a motion alleges facts which, if true, would entitle a defendant to a hearing . . . ." *State v. McColl*, 2011 SD 90, ¶ 10, 807 N.W.2d 813, 816.  We conclude it would be appropriate for us to also apply our habeas standard to determine whether a trial court erred in denying a post-conviction motion without a hearing.  *See id.* ("Even though habeas corpus involves a collateral attack on a conviction, we believe that the foregoing requirements are applicable here because a motion to withdraw a plea following a conviction is similar . . . .").

the files and records of the proceedings conclusively show that the petitioner is entitled to no relief.").

[19]    Whether the Superior Court has the power to grant the relief requested in a post-conviction motion is a question of law reviewed *de novo*.  *See Wai Kam Ho*, 2009 Guam 18 ¶ 6 (reviewing *de novo* whether trial court had inherent authority to expunge conviction).

## IV.  ANALYSIS

[20]    Guam is among the few jurisdictions in the United States without a compassionate-release procedure.  Although this court might have the authority to create such a procedure, "[i]t is not sufficient for a party 'simply to announce a position . . . and then leave it up to this [c]ourt to discover and rationalize the basis for his claims . . . .'"  *People v. Martin*, 2018 Guam 7 ¶ 42 n.7 (alterations in original) (quoting *Lamb v. Hoffman*, 2008 Guam 2 ¶ 35).  Tedtaotao has not sufficiently articulated how a decision here could serve as the basis for creating a compassionate-release procedure.  We reverse the decision of the trial court because it "drastically understated the impact of *Adriatico* on Guam's Jurisprudence," *see* Appellant's Br. at 10 (Aug. 5, 2025), but we decline to reach the inadequately briefed compassionate-release claim.

**A. The Trial Court Erred by Finding Mandatory LWOP for Youthful Offenders Was a Legal Sentence Without Holding an Evidentiary Hearing or Performing the Analysis Prescribed by *Adriatico***

[21]    Tedtaotao argues that the trial court "did not find *Adriatico* was applicable and did not exercise the 'evolving standards of decency' test."  *Id.*  He asks this court to "instruct the lower court to apply *Adriatico* and conduct the 'evolving standards of decency' test."  *Id.*  Tedtaotao further claims he should be given a "similar opportunity to put forth evidence of the evolving science on juvenile maturity and brain development applies to an emerging adult."  *Id.*  The People argue that "there is no automatic application of this Court's decision in *Adriatico*."  Appellee's Br.

at 7 (Sep. 18, 2025) (emphasis omitted). They further contend that, under *Adriatico*, it is within the Superior Court's discretion to order additional briefing or hold a hearing. *Id.* The People also suggest that, because Tedtaotao briefed the evolving-standards-of-decency test, the trial court "certainly followed the spirit of this Court's instructions" when it summarily denied Tedtaotao's motion. *See id.* at 9. The People conclude that "[o]nly a determination of the merits of that argument were required under *Adriatico* . . . ." *Id.* at 10. We hold that the trial court committed reversible error by summarily concluding that mandatory LWOP for youthful offenders is lawful without either conducting any analysis or holding an evidentiary hearing.

### 1. This court's decision in *Adriatico* established the legal standard for evaluating the legality of mandatory LWOP for youthful offenders

[22]     In *Adriatico*, the defendant argued that "mandatory LWOP sentences for youthful offenders constitute cruel and unusual punishment." 2024 Guam 7 ¶ 18. There, the defendant's motion to correct an illegal sentence had been summarily denied without the appointment of counsel or an evidentiary hearing. *See id.* ¶¶ 9–12. We reversed the summary denial of the defendant's motion, "with instructions to appoint counsel and hold an evidentiary hearing on how evolving science on brain development applies to an emerging adult and to Adriatico's specific circumstances." *Id.* ¶ 4.

[23]     We held in *Adriatico* that "courts should construe the term 'cruel and unusual punishments' as used in the Guam Bill of Rights with due regard for the historical, governmental, and cultural values of Guam." *Id.* ¶ 62. We observed that nothing was inherently flawed about the reasoning behind the federal "evolving standards of decency test," but it was inappropriate to impose that precedent on Guam where no federal decision had "considered Guam when evaluating whether mandatory LWOP for youthful offenders violates society's evolving standards of decency." *Id.* ¶¶ 63–64. We held that "to determine whether Guam's imposition of mandatory LWOP violates

the 'basic mores of society,' logically, 'society' must be defined to include Guam." *Id.* ¶ 64 (citation omitted). Rather than making the determination on appeal, we remanded with instructions for the trial court to survey "objective indicia" of societal values. *Id.* ¶ 65. We stated that "[o]n the record before us now, we express no opinion on how to properly define the boundaries of society, other than it must include Guam." *Id.* Ultimately, we concluded that "the trial court failed to entertain [the defendant's] cruel-and-unusual-punishment claims, and that remand for consideration under the legal standards articulated in th[e] opinion [wa]s appropriate." *Id.* ¶ 66. We ordered the trial court to (1) appoint the defendant counsel, (2) hold an evidentiary hearing on "how evolving science on brain development applies to an emerging adult and to Adriatico's specific circumstances," and (3) decide "whether imposition of mandatory LWOP sentences for youthful offenders violates Guam's evolving standards of decency that mark the progress of a maturing society." *Id.* ¶¶ 66–68.

[24] Although we did not fully resolve all the Organic Act issues raised in *Adriatico*, we provided guidance for the trial court on remand. We noted that "[a] good starting point" for the trial court's survey of objective indicia "would be the definition of 'Youth offender' found at 9 GCA § 83.15(d), which both parties argue represents objective indicia of Guam's societal values." *Id.* ¶ 65 n.14. We also provided the following summary of our research on the topic:

> "[T]wenty-two States and the District of Columbia do not mandate life without parole in any circumstance. Of the remaining twenty-eight States, only twelve . . . mandate life without parole." The statutes in at least two of those States that mandate LWOP for youthful offenders, including Hawaiʻi, provide an opportunity to avoid the mandatory nature of the sentence. Of those twelve states that have statutes authorizing mandatory LWOP for youthful offenders, the courts of at least three states have found those statutes unconstitutional to some extent. Additionally, it appears that neither CNMI, Marshall Islands, Palau, nor the Federated States of Micronesia mandate an LWOP sentence for any type of murder conviction.

*Id.* ¶ 65 n.15 (citations omitted).  Thus, we observed that out of the 50 states and District of Columbia, only ten jurisdictions have statutes that provide for mandatory LWOP for youthful offenders without exception, with seven of those states still enforcing their mandatory LWOP statutes as constitutional.[7]  We also observed that—other than Guam—no Pacific island jurisdiction based on American common law mandates LWOP without exception.[8]

### 2. The trial court erred by concluding that Tedtaotao's LWOP sentence was legal without applying the appropriate standard or holding an evidentiary hearing

[25]    The trial court committed reversible error by misinterpreting the *Adriatico* decision.  Although not stated explicitly, the only fair reading of *Adriatico* is that the defendant made "a colorable claim" that mandatory LWOP for youthful offenders violates the Organic Act Bill of Rights.  *See Adriatico*, 2024 Guam 7 ¶ 15; *see also id.* ¶ 67 ("If a Guam prisoner is housed in a federal penitentiary with allegedly no access to Guam law materials, and the court determines the claims raised are meritorious enough to hold a hearing, fundamental fairness demands the assistance of a trained advocate.").  We explicitly stated in *Adriatico* that "[t]he proper legal standard to apply to the claim that a mandatory LWOP sentence is inorganic is to apply a modified version of the 'evolving standards of decency' test that includes objective indicia of societal values from Guam."  *Id.* ¶ 70.

[26]    The trial court distinguished *Adriatico* from this case because we corrected only Adriatico's LWOP sentences for *attempted* aggravated murder but did not correct his aggravated-murder LWOP sentences.  *See* RA, tab 183 at 9 (Dec. & Order).  But this ignores our order for

---

[7] Since *Adriatico* was decided, the Colorado Supreme Court has declined to follow Massachusetts, Michigan, and Washington in finding mandatory LWOP for youthful offenders to be unconstitutional, concluding that Colorado's mandatory-LWOP statute was constitutional.  *See People v. Ray*, 2025 CO 42M, ¶ 177, *as modified on denial of reh'g* (Sep. 8, 2025).

[8] Our review unintentionally omitted American Samoa, which allows parole after serving 40 years of a life sentence.  *See* Am. Sam. Code Ann. § 46.3513.

further proceedings to determine whether Adriatico's aggravated-murder LWOP sentences were illegal. Tedtaotao had the right to an evidentiary hearing[9] because (1) we held the defendant in *Adriatico* had made a prima facie case for relief and (2) Tedtaotao's claim is indistinguishable from that in *Adriatico*. *See McColl*, 2011 SD 90, ¶ 10.

[27]    Further compounding the error, even assuming the trial court could have properly resolved the legality of Tedtaotao's mandatory-LWOP sentence as a matter of law, its conclusion lacked the analysis required by *Adriatico*. *See Blanke v. Utah Bd. of Pardons & Parole*, 2020 UT 39, ¶ 54, 467 P.3d 850 (Lee, J., concurring) ("[T]his is pure *ipse dixit* . . . a conclusory statement that the premise holds because we say it does."). The trial court's illegal-sentence inquiry merely confirmed that the aggravated-murder statute authorized LWOP. But this overlooked our holding that "[a] sentence that violates the Eighth Amendment's prohibition of cruel and unusual punishment is quintessentially an illegal sentence." *See Adriatico*, 2024 Guam 7 ¶ 15 (citation omitted).

[28]    Although *Adriatico* did not resolve whether mandatory-LWOP sentences for youthful offenders are illegal, it articulated the governing standard for evaluating such claims—the "evolving standards of decency" test—which the trial court failed to apply. Instead, the court summarily concluded, without analysis or citation to authority, that "[w]hile both Adriatico and Tedtaotao were considered youthful offenders at the time of their convictions, the court does not

---

[9] We note that the trial court generally handled Tedtaotao's compassionate-release motion in an appropriate manner. Here, the trial court both appointed counsel for Tedtaotao and held a hearing where evidence was taken. However, with the added guidance of our decision in *Adriatico*, it should have been apparent to the trial court that resolution of the resentencing motion required additional factual findings on the evolving science of brain development and how it applied to Tedtaotao's circumstances. It is true that an evidentiary hearing was held in this case, but a review of the hearing transcript suggests a shared understanding between the court and the attorneys that evidence regarding the motion for resentencing would not be heard at that time. *See* Tr. at 5–6, 15–16 (Mot. Compass. Release, Jan. 7, 2025).

find that a LWOP sentence for Aggravated Murder was an illegal sentence at the time of their convictions." *See* RA, tab 183 at 9 (Dec. & Order).

[29] The People contend that the trial court "sufficiently followed *Adriatico*," but these arguments miss the mark for several reasons. *See* Appellee's Br. at 7. The People claim that there is no "automatic application" of *Adriatico*, and that our decision did not obligate the trial court to hold an evidentiary hearing. *Id.* But the People ignore that *Adriatico* contemplated the possibility of two hearings on remand—one of which was mandatory. *See* Appellee's Br. at 7. Because Adriatico made a colorable Organic Act claim, we ordered the trial court to hold an evidentiary hearing on brain science and youthful offenders. *Adriatico*, 2024 Guam 7 ¶¶ 67–68. This was not discretionary. Then we ordered the trial court to survey objective indicia of societal values and apply the "evolving standards of decency" test. *Id.* ¶ 68. We stated that it was within the trial court's discretion whether it wished to hold an additional hearing to aid in this survey of objective indicia. *Id.*

[30] A defendant's right to an evidentiary hearing in a post-conviction proceeding may not be "automatic," but the trial court's discretion is sharply circumscribed when a defendant has made a prima facie case for relief. *See, e.g.*, *People v. Shipman*, 397 P.2d 993, 995 (Cal. 1965) (in bank) ("When . . . facts have been alleged with sufficient particularity to show that there are substantial legal or factual issues on which availability of the writ turns, the court *must* set the matter for hearing." (emphasis added) (citation omitted)). *Adriatico* stands for the proposition that when a motion to correct an illegal sentence states a prima facie case, an evidentiary hearing is required unless the issue can be resolved as a matter of law. It further stands for the uncontroversial proposition that a trial court can order supplemental briefing or a hearing to help resolve how the law applies to the facts of the case. But it is a misreading of *Adriatico* to claim an evidentiary

hearing is discretionary where a defendant has made a prima facie case that his sentence may be illegal—especially when his entitlement to relief turns on resolution of an issue of fact.

[31]    The People's claim that the trial court "certainly followed the spirit of this Court's instructions" when it summarily denied Tedtaotao's motion without analysis or citation to any authority (let alone the objective indicia of societal values required by *Adriatico*) is unsupportable. *See* Appellee's Br. at 9. This court has often stated that "trial judges should 'articulate the reasons for [their] decisions.'" *See, e.g.*, *Hawaiian Rock Prods. Corp. v. Ocean Hous., Inc.*, 2016 Guam 4 ¶ 29 (alteration in original) (citing *Rahmani v. Park*, 2011 Guam 7 ¶ 65). The court erroneously treated *Adriatico* as limited to its facts, reasoning that because Tedtaotao's criminal history was different, *Adriatico* had no application. The factual variations between the two cases are trivial. *See, e.g.*, *Commc'ns Inv. Corp. v. F.C.C.*, 641 F.2d 954, 976 (D.C. Cir. 1981) (observing that "finding factual variations from case to case is a trivial task" and that confining each case to its own facts "would virtually eliminate all precedent"). The trial court's decision overlooked the most important similarity between the two cases: Tedtaotao challenges his sentence on the same ground as Adriatico—that, as a youthful offender, he was subjected to mandatory LWOP in violation of the Organic Act's prohibition on cruel and unusual punishment. Any factual distinctions are immaterial; the claims are indistinguishable. Although the judges presiding over the respective cases need not reach identical conclusions, both are bound to apply the "evolving standards of decency" test articulated in *Adriatico*.

[32]    We reverse the trial court's decision and remand with instructions to hold an evidentiary hearing "on how evolving science on brain development applies to an emerging adult and to

[Tedtaotao]'s specific circumstances."[10]  *See Adriatico*, 2024 Guam 7 ¶ 4.  The trial court should then evaluate Tedtaotao's illegal-sentence claim under the legal framework established by *Adriatico*.

## B. The Issue of Compassionate Release Warrants Serious Consideration, but Tedtaotao's Briefing Is Inadequate

[33]    Guam is among a small number of U.S. jurisdictions that lack any form of compassionate release.  We take this concern seriously, including the potential role the judiciary might play to ease the suffering of an aging incarcerated population.  But Tedtaotao invites this court to create a compassionate-release mechanism based on a threadbare justification.  We therefore decline to reach this inadequately briefed issue.

[34]    Most commonly, "compassionate release" is a colloquial term that refers to one of the "extraordinary and compelling reasons" a federal court may modify a term of imprisonment under the Sentencing Reform Act of 1984.  *See* 18 U.S.C.A. § 3582(c) (Westlaw through Pub. L. 119-100 (2026)); Chun Hin Jeffrey Tsoi, *Compassionate Release as Compassionate Decarceration: State Influence on Federal Compassionate Release and the Unfinished Federal Reform*, 59 Am. Crim. L. Rev. Online 1, 1 (2021).  Most states have some provision for medical parole or compassionate release: "Terminology used by the various states includes, but is not limited to, medical parole, medical furlough, executive clemency, medical pardon, medical reprieve, medical release, parole for humanitarian reasons, parole of dying prisoners, community furlough, and compassionate leave."  Marjorie P. Russell, *Too Little, Too Late, Too Slow: Compassionate Release of Terminally Ill Prisoners—Is the Cure Worse Than the Disease?*, 3 Widener J. Pub. L.

---

[10] In the interest of conservation of judicial resources, on remand, Tedtaotao may move to consolidate his evidentiary hearing on the science underlying his claim with the evidentiary hearing relating to the science on Adriatico's claims.  *See Moss v. United States*, 323 F.3d 445, 452 & n.13 (6th Cir. 2003).  As of this writing, such a hearing was still pending in Adriatico's case.

799, 801 n.10 (1994). Of the fifty states, forty-nine have codified a compassionate-release mechanism in their law. *See* Julie B. Cramer, *Releasing Compassion in the States*, 76 Ala. L. Rev. 285, 304 (2024) ("Currently, forty-nine states and the District of Columbia provide some means for incarcerated people to obtain an early release from prison when they are facing imminent death or significant illness.").[11] However, compassionate release that is both prisoner-initiated and court-ordered is a relatively recent development. *See* Tsoi, *supra*, at 1-2 (stating it was not until 2018 that the law was amended to allow federal prisoners to file their own compassionate-release petitions). In 1994, the American Bar Association conducted a survey that found only two states had court-ordered compassionate-release procedures. *Id.* at 8. And only the New Jersey procedure allowed a defendant to file his own compassionate-release motion. *Id.* at 2.[12]

[35] Arguably, the issue of compassionate release asks this court what the judiciary's role should be when the Legislature has failed to remedy a gap in the law that may result in injustice. *Cf. Alvis v. Ribar*, 421 N.E.2d 886, 896 (Ill. 1981) (stating that when legislature has "failed to act to remedy a gap in the common law that results in injustice, it is the imperative duty of the court to repair that injustice and reform the law to be responsive to the demands of society"), *superseded by statute on other grounds*, 735 Ill. Comp. Stat. Ann. 5/2-1116 (West 1986), *as recognized in*,

---

[11] Not unlike the jurisdictional surveys of LWOP we criticized in *Adriatico*, *see* 2024 Guam 7 ¶¶ 62–63, most surveys of compassionate release ignore Guam, Puerto Rico, American Samoa, the Northern Marianas, and the Virgin Islands. Our review shows that Puerto Rico has such a statute, P.R. Laws Ann. tit. 4, § 1601, the Virgin Island Superior Court has said it has no power to grant compassionate release in the absence of a statute, *People v. Medina*, No. SX-01-CR-351, 2013 WL 12402138, at *2 (V.I. Super. Ct. Sep. 27, 2013), and the issue appears unsettled in other jurisdictions where courts may recognize customary law, *see, e.g.*, 7 N. Mar. I. Code § 3401 (2026) (requiring courts prioritize local customary law over common law).

[12] The New Jersey Rules Governing Criminal Procedure generally provide that a motion to reduce a sentence must be filed within 60 days of the judgment of conviction. *See* N.J. Ct. R. 3:21-10(a). However, the rules also provide that "[a] motion may be filed and an order may be entered at any time," for any of seven enumerated exceptions. N.J. Ct. R. 3:21-10(b). For the past 50 years, New Jersey Criminal Practice Rule 3:21-10 has recognized an exception allowing a defendant to move at any time to amend "a custodial sentence to permit the release of a defendant because of illness or infirmity of the defendant." *See* N.J. Ct. R. 3:21-10(b)(2); *State v. Tumminello*, 358 A.2d 769, 771 (N.J. 1976). Thus, by providing a procedural exception to the deadline for filing a motion to reduce a sentence, the New Jersey Supreme Court effectively created a compassionate-release procedure.

*Burke v. 12 Rothschild's Liquor Mart, Inc.*, 593 N.E.2d 522, 527 (Ill. 1992).  Although the example of New Jersey shows we are not necessarily forced to await action by the Legislature on compassionate release, we are skeptical of Tedtaotao's arguments that we have the inherent authority to create this procedure within the confines of this appeal.

[36]    Tedtaotao suggests that under this court's inherent authority, we can apply the federal compassionate-release statute to Guam prisoners held in federal custody.  However, 7 GCA § 7107(h) is a threadbare justification for this court stepping into the breach.  That provision states that the courts of Guam have the power "[t]o amend and control its process and orders so as to make them conformable to law and justice."  7 GCA § 7107(h).  This statute is derived from former Guam Code of Civil Procedure section 113, which was adopted from the California Code of Civil Procedure ("CCP") section with the same number.  *See id.*, Source; Guam Code Civ. Proc. § 113 (1953) (Foreword).  Now found at section 128, the California provision provides: "Every court shall have the power to do all of the following: . . . . To amend and control its process and orders so as to make them conform to law and justice."  Cal. Civ. Proc. Code § 128(a)(8) (West, Westlaw current with urgency legislation through Ch. 101 of 2026 Reg. Sess.).  Tedtaotao cites no case— California or otherwise—supporting the proposition that a court has the inherent authority to grant compassionate release, likely because this authority would be in derogation of the common law.

[37]    The California Court of Appeal has observed that CCP § 128(a)(8) "is consistent with and codifies the courts' traditional and inherent judicial power to do whatever is necessary and appropriate, in the absence of controlling legislation, to ensure the prompt, fair, and orderly administration of justice."  *Kinney v. Clark*, 219 Cal. Rptr. 3d 247, 262 (Ct. App. 2017) (citation omitted).  But "the common law rule [was] that the court loses resentencing jurisdiction once execution of sentence has begun."  *Portillo v. Superior Court (People)*, 13 Cal. Rptr. 2d 709, 712

(Ct. App. 1992) (citation omitted). Accordingly, to the extent the Superior Court possesses authority to grant compassionate release, that authority must rest on some positive provision of law beyond its traditional powers. Because Tedtaotao identifies no such source of authority, we find it inappropriate to reach the merits of his request for compassionate release.[13]

[38]    The issue of compassionate release demands further attention from all branches of our government.[14] But given the inadequate briefing before us, we cannot chart a path forward in this appeal.

## V.  CONCLUSION

[39]    The trial court misapprehended our decision in *Adriatico*, which constitutes reversible error. Given Tedtaotao's inadequate briefing, it would be imprudent for us to reach the issue of compassionate release. We **REVERSE** and **REMAND** with instructions to (1) hold an evidentiary hearing on how evolving science on brain development applies to an emerging adult and to Tedtaotao's specific circumstances, and (2) apply the correct legal standard to Tedtaotao's illegal-sentence claim.



| /s/ | /s/ |
|---|---|
| F. PHILIP CARBULLIDO | ROBERT J. TORRES |
| Associate Justice | Associate Justice |

| /s/ |
|---|
| KATHERINE A. MARAMAN |
| Chief Justice |

---

[13] Although we do not address compassionate release because it was not adequately briefed, Tedtaotao has available actions he may still pursue under the existing post-conviction framework, including 8 GCA § 120.46 and the habeas statutes.

[14] Tedtaotao remains free to (1) develop a compassionate-release argument on remand if he is able to do so under the illegal sentence rubric, (2) file a habeas petition, (3) seek executive clemency, (4) petition the Legislature to adopt a compassionate-release statute, or (5) petition this court to adopt amended rules of criminal procedure through our established notice-and-comment procedure.